## Hildebrant's Estate.

*Wills—Construction—Remaindermen.*

Where a testator in his will provided that the income of his estate was to be paid to his son during his life, and upon his death to such children as he might leave, and in the event of the son dying without issue to be divided among testator's relatives under the intestate law, upon the death of the son without issue, the estate vested equally in the mother and widow of the life tenant.

Argued November 10, 1919.  Appeal, No. 93, October T., 1919, by William H. Hildebrant, from decree of O. C. Lancaster Co., April T., 1903, No. 87, dismissing exceptions to the adjudication in the Estate of Martin Hildebrant, deceased.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ.  Affirmed.

Exceptions to adjudication.  Before SMITH, P. J.

The court filed the following opinion, dismissing exceptions to the adjudication:

The essential parts of the testator's will are as follows:

"Subject to the foregoing provisions in this my will, I give to my wife Amanda the net rents, issues, income and profits of all my estate, real, personal and mixed, for her natural life; that is to include the proceeds of all my property, rights and choses in action wheresoever situated, whether in Pennsylvania, Arizona or elsewhere, less Thirty Dollars every three months payable as hereinafter; and I direct my Executors to pay her such net rents, issues, income and profits annually, less said Thirty Dollars quarterly. During my wife's lifetime my Executors shall pay my son Harry Thirty Dollars every three months.

"After the death of my said wife, Amanda, I direct my Executor or Executors to pay all the rents, incomes and profits of my estate, subject to all the foregoing provisions, to my son, Harry K. Hildebrant, during his

natural life and the Thirty Dollars quarterly; and the same shall not be subject to any assignment, pledge or anticipation by him, nor to any attachment issued upon any judgment, debt or claim against him, nor shall it be liable for any debts contracted by him in any way, or to any process of execution, sequestration or attachment. And, upon and after the death of my said son, Harry K. Hildebrant, and subject to all the foregoing provisions of this my will, I direct my Executor or Executors to give and pay all the residue and remainder of my estate, real, personal and mixed, to such child or children as the said Harry K. Hildebrant may leave to survive him; and, in the event that he shall die without leaving issue, I direct my estate to be divided among my relatives under the intestate laws of Pennsylvania.

"For the purposes of carrying out all the foregoing provisions of my will, I give to my Executors, and the survivor of them, full power and authority and hereby authorize and direct them, in their discretion, to sell any or all of my real estate at public or private sale, and to make good and sufficient deeds and conveyances to the purchaser or purchasers of any and all kinds of my property, in fee simple, and, until the same be sold, my Executors shall lease the same and collect the rents, income and profits thereof."

Harry K. Hildebrant, the testator's only child, died without issue May 23, 1908, leaving a widow, Mary M. Hildebrant, who died December 3, 1913, and on March 12, 1917, the testator's widow, Amanda Hildebrant, died. All life beneficiaries are dead.

The balance for distribution is the proceeds of real estate sold before the death of Harry K. Hildebrant by the executors under power in the will for the purpose of carrying out its provisions.

To the decree of distribution exceptions have been filed, assigning as error the refusal to award the balance to descendants of John Hildebrant, who was the father of the testator, less certain interest which had accrued

and was payable to the administrator of the estate of
Harry K. Hildebrant by virtue of the bequest of thirty
dollars quarterly to him during the life of the testator's
widow.  (Hildebrant's Estate, 42 Pa. Superior Ct. 190.)
The amount of this interest is three hundred and eighty
dollars, and it has not been accounted for.  It is frank-
ly admitted that it has not been paid, but was given to
Amanda Hildebrant, the widow of the testator.  There-
fore, with this amount the accountants must be sur-
charged and the same is awarded to the Peoples Trust
Company, administrator d. b. n. of the estate of Harry
K. Hildebrant.

When writing his will the testator was thoughtful of
his family and near kindred.  For each his wife, son,
brother and sisters he made provisions for life.  Sub-
ject to these life interests he gave his estate to the chil-
dren of his son who might survive him, and further pro-
vided "in the event that he should die without leaving
issue, I direct my estate to be divided among my rela-
tives under the intestate laws of Pennsylvania."  As no
child survived his son in him vested the remainder, sub-
ject to the widow's interest.  No strained construction
is necessary to arrive at this conclusion and it is abun-
dantly supported by authority: Buzby's App., 61 Pa.
111; Stewart's Est., 147 Pa. 383; McCrea's Est., 180
Pa. 81; Fuller's Est., 225 Pa. 626; Fitzpatrick's Est.,
233 Pa. 33; McFillin's Est., 235 Pa. 175.

Having specially provided for each of his kin in whom
he was interested, the testator then, as is not uncommon,
concluded to let his estate descend as under the intestate
laws of the Commonwealth, and, as thereby his son and
his widow would be his beneficiaries, it is altogether
consistent with a natural and a meditated purpose.  As
nowhere within the four corners of the will can be found
any " 'demonstration' " (Stewart's Est., supra), the tes-
tator's intention would have been defeated if the excep-
tants' contention—that the vesting should be suspended
until after the death of Harry K. Hildebrant—had been

allowed to prevail. The clause "And upon and after the death of my son" clearly refers to the event and not to the time; and if it was a close question a vested remainder would be preferred to a contingent one.

Sometimes in equity a fiction is resorted to, known as an equitable conversion, whereby real estate may descend as money; but no such transmutation has taken place in this case. The real estate at the death of the testator vested in his son. Following this first devolution it was sold and at the son's death it was transmitted as money, which ever since it has been and as such has been accounted for.

In Lackey's Est., 149 Pa. 7, in construing a trust deed analogous to the will under consideration the court said: "It will thus be seen that there has been an actual conversion under the power contained in the trust deed. While money is sometimes treated as real estate, it is at most a fiction which equity resorts to for the accomplishment of certain equitable results. This fiction ends, however, with the first devolution. It would be inconvenient and absurd for money to retain the character of real estate from generation to generation. For the purposes of this case, the position of Ann M. Lackey, the settlor, was precisely analogous to that of a testator in a will, or to one who died seized of the land. The first transmission took place when the property vested in Mrs. Schetky, which occurred when the deed of trust was executed and delivered, giving her an equitable interest as to moiety, and this interest having vested in her is now to be treated, as personalty with all its incidents: Scott's App., 137 Pa. 454."

In Charles Ingersoll's Est., Maury's App., 167 Pa. 549, it was said: "This result not only follows from the intention of the testator and the transmission of powers from him to the trustees, but is also in accord with the decisions. In Wharton v. Shaw, 3 W. & S. 124, the rule was thus expressed by KENNEDY, J., 'the estate though real at the time of the making of the will, as also at the

death of the testator, was certainly changed afterwards by the sale made of it, into personal estate. And being so changed by an authority given by the testator himself in his will to his executors, it can no longer be considered real estate, unless from his will it clearly appears to have been his intention that the money which might arise from the sale should be considered real estate, or be again invested in the purchase of other real estate.' See also Lackey's Est., 149 Pa. 7. The conversions therefore made by the trustees from real to personal estate, or vice versa, in pursuance of their powers, during the life of C. I. Maury, were actual and legal, and upon his death such property passed according to its actual status at that time."

It follows that at the death of Harry K. Hildebrant this money vested equally in Mary M. Hildebrant, his widow, and Amanda Hildebrant, his mother.

It did not appear that an administration had been raised on either of these estates and no claim at the audit was made in behalf of either. Counsel who, it was understood, represented those interested in them appeared as counsel for the Peoples Trust Company, administrator d. b. n. of the estate of Harry K. Hildebrant, and urged that the whole estate be awarded to that administrator and thus upon the settlement of its account the interests of the estate could be satisfactorily and more economically arranged, consequently the award was so made. Scanty was the evidence offered at the audit. As there was a disposition to fairly adjust matters much was taken for granted by the parties and only after the decree had been entered and exceptions filed was important evidence submitted by agreement. There are yet certain matters left open which for want of evidence will be passed. Each counsel having entire faith in the fairness and ability of the other, they request that to them be left their settlement.

The exceptions are dismissed, but notwithstanding the amicable temperament of the parties who seem now

to differ only as to the law governing the descent of the estate, which is a difference depending alone on whether it be as personalty or realty, it is deemed advisable to adopt a more orderly procedure, and, therefore, instead of awarding to the administrator d. b. n. of Harry W. Hildebrant, the whole balance is awarded in an equal portion to each and an administrator to be appointed of the estate of Amanda Hildebrant and (as we are now informed that Mary M. Hildebrant left a will) to the Peoples Trust Company, executor of the will of Mary M. Hildebrant.

As conforming with this opinion the adjudication is confirmed absolutely.

*Error assigned* was the decree dismissing the exceptions to adjudication.

*John A. Nauman,* for appellant.

*Frank S. Groff,* for appellee.

PER CURIAM, December 10, 1919:

A majority of the judges who heard this appeal are of the opinion that its disposition is to be determined by McFillin's Estate, 235 Pa. 175, and for that reason the decree of the orphans' court is affirmed.